FILED

2024 Mar-29  PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **TITLEMAX OF ALABAMA, INC.,** | **Case No. 7:21-cv-1602-CLM** |
| Plaintiff, | *and consolidated cases no.*: **7:21-cv-1659-CLM; 7:21-cv-1660-CLM; 7:21-cv-1708-CLM; 7:21-cv-1714-CLM; 7:21-cv-1715-CLM; 7:21-cv-1716-CLM; 7:22-cv-89-CLM; 7:22-cv-91-CLM; 7:22-cv-139-CLM.** |
| **v.** | |
| **NAUQUITA L. HAMBRIGHT, and C. DAVID COTTINGHAM** | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

This case is about title pawns. The question is straightforward: If someone pawns her car's title to get a loan, then doesn't repay the loan, what does the borrower forfeit to the pawnbroker: just the paper title that she left at the pawnshop or the car and its title?

Alabama law controls the answer. Below, the bankruptcy court said the borrower forfeited the certificate of title but not the car because, based on the court's reading of Alabama's pawn statute, the borrower forfeits only those tangible items she leaves at the pawnshop—and she only left the paper title. This court agrees that's a plausible reading of the statute.

But Alabama courts have interpreted the statute differently; they have said the pawnbroker owns the car the moment the borrower defaults. This is also a plausible reading of the statute.

Federal courts must apply state law the way the state courts interpret it. So this court **REVERSES** the bankruptcy court's finding that the borrower still owned the vehicle after default and **REMANDS** each of the consolidated cases listed in the caption for further proceedings consistent with this court's findings.

## BACKGROUND

This case includes 10 consolidated appeals, all involving the pawning of a vehicle's title and all arising from the Bankruptcy Court's opinion in *TitleMax of Ala., Inc. v. Hambright (In re Hambright)*, No. 20-70608-JHH13, AP No. 20-70016-JHH, 2021 WL 5441074 (Bankr. N.D. Ala. Nov. 19, 2021), *amended by* 635 B.R. 614 (Bankr. N.D. Ala. 2022). This opinion focuses on Hambright's case. But before we recount Hambright's story, we look at the statute that has caused so much trouble.

### A. The Alabama Pawnshop Act

Generally, the Alabama Pawnshop Act (APA) allows someone ("pledgor") to obtain money by either selling a good to a pawnbroker or giving a secured interest in a good to a pawnbroker, then either (a) repaying the money to redeem the good or (b) not repaying the money and forfeiting the good. Three provisions set out this general scheme:

- **A pawn transaction** is "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." Ala. Code 5-19A-2(3).
- **Automatic Forfeiture**: "Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." Ala. Code § 5-19A-6.
- "**Pledged goods**" are defined as "[t]angible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction." Ala. Code § 5-19A-2(6).

These provisions are easy to apply to items like jewelry and appliances. For example, the pawnbroker gives the pledgor $1,000 and a pawn ticket, and the pledgor leaves a necklace at the pawnshop. If the borrower pays back the $1,000 plus interest or pawn fee, the pawnbroker gives back the necklace. If the pledgor fails to pay back the $1,000, the pawnbroker keeps the necklace.

Title pawns are harder. Rather than leave his car with the pawnbroker, the pledgor signs a lien on the certificate of title and gives the certificate of title to the pawnbroker; he then leaves with $1,000 ***and*** the car. If the pledgor repays the pawn, the pawnbroker returns the certificate of title. That's easy.

The trouble comes if the pledgor doesn't redeem in time; what "pledged good" does he forfeit? Let's look again at the three key provisions, this time focusing on possession of the "pledged good" during the repayment period:

- **A pawn transaction** is "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." Ala. Code 5-19A-2(3) (highlight added).
- "**Pledged goods**" are defined as "[t]angible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction." Ala. Code § 5-19A-2(6) (highlight added).
- **Automatic Forfeiture**: "Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." Ala. Code § 5-19A-6.

Do these provisions require that, to be a "pledged good" that can be forfeited, the pledgor's property be "left with the pawnbroker," Ala. Code § 5-19A-2(3), or "actually delivered into the possession of the pawnbroker?" Ala. Code § 5-19A-2(6). If the answer is 'yes, the pledged good must be left at the pawnshop,' then what pledged good does the pledgor forfeit if he fails to redeem a vehicle title pawn: (a) the car plus its title or (b) just the paper title, because the paper is the only tangible item actually possessed by the pawnbroker?

That's the dispute between borrower Nauquita Hambright and pawnbroker TitleMax of Alabama, Inc. ("TitleMax"). When Hambright failed to redeem her pawn, she says she forfeited the paper title; TitleMax says she forfeited the car and its title.

### B. Hambright's title pawn

Hambright gave a "security interest in," and "the Title" to, her 2013 Dodge Challenger to TitleMax in exchange for $6,739.14:

**PAWN TICKET AND SECURITY AGREEMENT**

THIS PAWN TICKET AND SECURITY AGREEMENT CONTAINS A WAIVER OF JURY TRIAL AND ARBITRATION CLAUSE (THE "CLAUSE"). UNLESS YOU OPT OUT OF THE CLAUSE, IT WILL SUBSTANTIALLY IMPACT YOUR RIGHTS IF YOU HAVE A DISPUTE WITH LENDER, INCLUDING YOUR RIGHT TO TAKE PART IN A CLASS ACTION.

| Pawnbroker/Lender: TitleMax of Alabama, Inc. d/b/a TITLEMAX 720 E. SKYLAND BLVD TUSCALOOSA, AL 35405 (205) 553-3470 | Pawn Transaction Date: 03/26/2020 | Pawn Transaction #: | |
| | Vehicle Identification #: 2C3CDYAG8DH553772 | Vehicle Year: 2013 | Vehicle Make: Dodge |
| | Title Certificate #: 47053560 | Lic. Plate #: 0946AJ5 | Vehicle Model: Challenger |
| Pledgor: NAUQUITA LA'SHAWN HAMBRIGHT 2201 48 STREET EAST 1508 TUSCALOOSA, AL 35405 | Date of Birth: Race: Black / African American | Co-Pledgor: N/A | Date of Birth: N/A Race: |
| ID Type: Driver's License   ID Number: | Height: 5ft 6in | ID Type:   ID Number: | Height: |
| ID Issuing Agency: Alabama | Sex: F | ID Issuing Agency: | Sex: |

In this Pawn Ticket and Security Agreement (this "Agreement" or "Ticket"), "you," "your," "pledgor," and "co-pledgor" each means the Pledgor(s) identified above. "Pawnbroker," "Lender," "we," "us," and "our" each mean TitleMax of Alabama, Inc. "Pawn" and "Transaction" mean the pawn transaction entered into between Lender and Pledgor hereunder. "Vehicle" means the motor vehicle described above. "Title" means the certificate of title for the Vehicle. Lender operates under the Alabama Pawn Shop Act, Alabama Code § 5-19A-1 et seq., is licensed and regulated by the Alabama State Banking Department, P.O. Box 4600, Montgomery, AL 36103-4600, (866) 465-2279, consumer.lending@banking.alabama.gov.

1. **Pawn and Security Agreement:** You promise to pay Lender, or to Lender's order, the principal sum of $6,739.14  plus a Pawnshop Charge in the amount of $808.02 , with the total amount of $7,547.16  due and payable on 04/25/2020  (the "*Maturity Date*"). The Pawnshop Charge is further described in Section 2.  You also promise to pay all other amounts that become due and payable under this Agreement.  To secure Pledgor's obligations to Lender hereunder, Pledgor grants to Lender a security interest in the Vehicle and the Title, together with all Vehicle improvements, attachments, insurance proceeds and refunds and sale proceeds.  You agree that Lender will record its security interest in the Vehicle by noting a lien on the Title.  Lender may file any documents and take any actions to ensure Lender's security interest in the Vehicle.  If Lender asks, you will sign other documents and take other actions to support Lender's security interest.  Lender's lien does not secure Pledgor's other debts due to Lender.  Lender's lien is subject to the rights of other persons who have an ownership interest or prior liens in the Vehicle.

Hambright agreed that TitleMax would hold her car's title, and that she had the right to redeem it by paying TitleMax $7,547.16. If she did, TitleMax would "release the security interest in the Vehicle and return the Title to [Hambright]":

3. **Possession of the Title:** You agree that we shall hold the Title for the entire length of this Agreement. You have the exclusive right to redeem the Title by repaying the Pawn in full and complying with this Agreement. When you satisfy all outstanding obligations pursuant to this Agreement and Alabama law and you present suitable identification to us, you may redeem the Vehicle and/or Title. When you redeem the Title, we will release the security interest in the Vehicle and return the Title to you.

Hambright also agreed that, if she did not redeem the pawn within 30 days of the maturity date (April 25, 2020), "the Vehicle shall be forfeited to and absolute right, title, and interest in and to the Vehicle shall vest in [TitleMax]" and that TitleMax or its recovery vendor could "take possession of the Vehicle upon [her] default," without a court order or any other judicial process:

6. **Non-Recourse; Delinquent Payment and Additional Pawnshop Charges; Nonpayment and Failure to Redeem:** This Pawn is non-recourse to you.  You shall have no obligation to redeem the Vehicle or make any payment on this Pawn.  Nothing in this Agreement gives us any recourse against you personally other than our right to take possession of the Vehicle upon your default, and to sell or otherwise dispose of the Vehicle in accordance with the Alabama Pawn Shop Act.

Lender is entitled to assess an additional pawnshop charge in the amount equal to the Pawnshop Charge set forth above for principal amounts that remain outstanding and unpaid following the Maturity Date. Additional pawnshop charges assessed following the Maturity Date will be prorated if you redeem the Vehicle or pay the accrued and outstanding charges and enter into a new Pawn Ticket and Security Agreement with us, based on the number of days between the Maturity Date and the redemption date or new pawn transaction date, as applicable.

If you fail to redeem the Vehicle within 30 days following the Maturity Date hereunder, and you do not pay accrued and outstanding charges and enter into a new Pawn Ticket and Security Agreement with us, then the Vehicle shall be forfeited to and absolute right, title, and interest in and to the Vehicle shall vest in Lender.

7. **Voluntary Surrender:** At any time, you may choose to voluntarily surrender possession, ownership, and all other right and interest in and to the Vehicle and Title to us. Upon your voluntary surrender, we will retain possession of the Vehicle and the Title and will not sell the Vehicle before the 30th day following the Maturity Date.

8. **Default and Repossession:** If you fail to timely pay any amount payable hereunder when due, then your account will be in default.  You also will be in default if you made any false representation warranty, promise, or provision in or in connection with entering into this Agreement.  We may take possession of the Vehicle upon your default.  We or our recovery vendor may take possession of the Vehicle without judicial process if doing so can be done without breaching the peace.  We may not sell the Vehicle before the 30th day following the Maturity Date.

(Doc. 32-1, pp. 28-34). Hambright didn't redeem the pawn by the maturity date (April 25, 2020), or the 30-day grace period (May 26, 2020).

### C. Hambright's Chapter 13 petition

Hambright filed a Chapter 13 Bankruptcy petition between the pawn's maturity date and the end of the 30-day grace period:

- April 25, 2020:    Maturity date
- April 30, 2020:    Hambright files petition
- May 26, 2020:     30-day grace period expired.

Hambright physically possessed the Dodge Challenger when she filed her petition, and she proposed to treat TitleMax as a secured creditor.

TitleMax objected and filed an adversary proceeding, arguing that it owned the vehicle. According to TitleMax, Hambright (and her estate) forfeited all rights and interests in the vehicle when she failed to redeem "her title and Vehicle within 60 days of the filing of her petition." (Doc. 4-11, p. 9). TitleMax disclaimed constructive possession.

Hambright and the trustee said that the vehicle was not a pledged good subject to the automatic-forfeiture provision. They argued that "this pawn transaction is a title pawn, not a vehicle pawn," (doc. 4-12, pp. 4-5), effectively conceding that the certificate of title was a pledged good. TitleMax responded that even if the certificate of title alone—not the vehicle—was the pledged good, TitleMax held absolute title to the vehicle because "all rights in the vehicle's title transferred to TitleMax" upon automatic forfeiture and "ownership follows title." (Doc. 4-13, p. 3).

### D. The Bankruptcy Court's decision

The Bankruptcy Court held that Hambright owned the Dodge Challenger and that TitleMax merely held a security interest in it. *In re Hambright*, 635 B.R. at 671-73. The court rested its conclusion on three findings.

First, Hambright's vehicle was not a "pledged good" under the APA because TitleMax never possessed the vehicle. The court adhered, in its view, to "the plain language of the Alabama Pawnshop Act," *id.* at 623, and emphasized that TitleMax disclaimed any constructive-possession argument. *Id.* at 671.

Second, Hambright and TitleMax could not "effect a pre-agreed forfeiture of Hambright's UCC rights, or common law equitable title, by contract." *Id.* As a result, TitleMax did not take ownership through the contract term providing that Hambright's failure to repay the loan triggered automatic forfeiture of the vehicle.

Third, automatic forfeiture of the unassigned certificate of title did not transfer absolute title to the vehicle to TitleMax under Ala. Code § 32-8-44(a). So Hambright owned the vehicle even though she forfeited the certificate of title to TitleMax.

In sum, because Hambright still possessed the Challenger, the court held that the APA did not cause it to fall out of the bankruptcy estate when the 30-day grace period ended. So, the court explained, Hambright and the estate could "treat TitleMax as the holder of a claim secured by a lien on the Vehicle in Hambright's bankruptcy case." *Id.* at 675. The court entered final judgment against TitleMax in its adversary proceeding and overruled its plan-confirmation objection.

### E.  TitleMax's appeal

TitleMax appealed to this court. This court then consolidated two *Hambright* cases with eight similar appeals.[1] (Doc. 10). In each case, TitleMax took possession of a debtor's certificate of title, recorded a lien on the title, and the debtor retained possession of their vehicle. The bankruptcy court's decision in *Hambright* supported the decision in each

---

[1] *TitleMax of Alabama, Inc. v. Hambright*, 7:21-cv-1708-CLM; *TitleMax of Alabama, Inc. v. Gurtler*, 7:21-cv-1659-CLM; *TitleMax of Alabama, Inc. v. Coleman*, 7:21-cv-1660-CLM; *TitleMax of Alabama, Inc. v. Crispin*, 7:21-cv-1714-CLM; *TitleMax of Alabama, Inc. v. Hargrove*, 7:21-cv-1715-CLM; *TitleMax of Alabama, Inc. v. Burrell*, 7:21-cv-1716-CLM; *TitleMax of Alabama, Inc. v. Myrick*, 7:22-cv-89-CLM; *TitleMax of Alabama, Inc. v. Gurtler*, 7:22-cv-91-CLM; *TitleMax of Alabama, Inc. v. Harrington*, 7:22-cv-139-CLM.

of these actions.

TitleMax asked the court to certify the 10 consolidated appeals to the Eleventh Circuit under 28 U.S.C. § 158(d)(2)(A). (Doc. 3). The court granted TitleMax's motion and certified the appeal. (Doc. 19). The Circuit Court denied TitleMax's petition for permission to appeal.

Next, TitleMax moved to reopen the cases and certify the main issue to the Alabama Supreme Court. (Doc. 20). The court granted TitleMax's motion and certified this question to the Alabama Supreme Court:

> In a pawn transaction involving a motor vehicle, if the pledgor leaves the certificate of title with the pawn broker but keeps possession of the vehicle, then fails to repay the pawn, who owns the vehicle at the moment of automatic forfeiture under Ala. Code § 5-19A-6?

(Doc. 27). In a 5-4 decision, the Alabama Supreme Court declined to answer the state-law question. (Doc. 29). Having unsuccessfully asked everyone else to end the debate, this court must now re-engage.

## STANDARD OF REVIEW

A district court assumes the role of an appellate court when reviewing the decision of a bankruptcy court. *See* 28 U.S.C. § 158(a). In resolving a bankruptcy appeal, the district court reviews the factual findings of the bankruptcy court for clear error and its legal conclusions de novo. *In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009).

## DISCUSSION

The court starts with the most important—and ultimately determinative—point: Even though bankruptcy is federal law, "property interests are created and defined by state law." *In re Northington*, 876 F.3d 1302, 1310 (11th Cir. 2017). That means "the nature and existence of the debtor's right to property is determined by looking to state law." *Id.* So no matter what this federal court thinks Alabama's pawn statute says, whatever Alabama courts have said, goes.

With that caveat, the court tackles the question it asked the Supreme Court of Alabama:

> In a pawn transaction involving a motor vehicle, if the pledgor leaves the certificate of title with the pawn broker but keeps possession of the vehicle, then fails to repay the pawn, who owns the vehicle at the moment of automatic forfeiture under Ala. Code § 5-19A-6?

(Doc. 27). The answer is the pawnbroker, but not because the APA plainly says so. As explained in Part 1, this court agrees with the bankruptcy court that one plausible reading of the APA says that the pledgor only forfeits tangible items she leaves with the pawnbroker. If she only leaves the paper title, then she only forfeits the paper title.

But, as detailed in Part 2, the Alabama appellate courts have read the APA otherwise; they've said the car is automatically forfeited. This reading is also plausible. Because this federal court must apply state law as interpreted by the state's appellate courts, it finds that TitleMax owned the Dodge Challenger as soon as the 30-day grace period expired. In doing so, the court vindicates TitleMax's rights under the pawn agreement, which unambiguously says that Hambright would forfeit the "Vehicle" and "absolute right, title, and interest" in the vehicle if she failed to make full payment by the end of the grace period, and that TitleMax could take possession at any time after that, without judicial proceedings.

## 1. Plain reading of the APA

You can plausibly read the statute to go either way. The court starts with the provisions that suggest TitleMax had to physically possess the vehicle to own the vehicle when Hambright failed to redeem.

### A. Physical possession is required

The APA's definition of a pawn transaction imposes a condition that the "pledged good" be left with the pawnbroker:

> **(3) Pawn Transaction.** Any loan on the security of pledged goods or any purchase of pledged goods <mark>on condition that the pledged goods are left with the pawnbroker</mark> and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time.

Ala. Code § 5-19A-2(3) (highlight added). TitleMax rightly argues this definition creates two distinct types of pawn transactions: (a) a loan on the security of pledged goods and (b) the purchase of pledged goods. But TitleMax wrongly argues the condition "that the pledged goods are left with the pawnbroker" only applies to purchases, not loans on security. Security loans and purchases are parallel options, both involving "pledged goods." So the Series-Qualifier Canon suggests that the postpositive condition "applies to the entire series." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 19, at 147 (2012).

The definition of pledged goods supports this reading:

> **(6) Pledged goods**. Tangible personal property other than choses in action, securities, or printed evidences of indebtedness, <mark>which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker</mark> in connection with a pawn transaction.

Ala. Code § 5-19A-2(6) (highlight added). The highlighted phrase is disjunctive, so the catch-all phrase at the end—"or otherwise actually delivered into the possession of a pawnbroker"—applies to the "same general kind or class specifically mentioned" before it. Scalia & Garner, *Reading Law* § 32, at 199 (*ejusdem generis* canon). That means all three parts of the series require a pledged good be "actually delivered into the possession" of the pawnbroker.

Other provisions of the APA assume that the pawnbroker physically possesses the "pledged good." For example, the APA gives the pawnbroker a lien on the pledged goods, then says "[t]he pawnbroker shall retain possession of the pledged goods except as otherwise herein provided until the lien is satisfied." Ala. Code § 5-19A-10(a). The next provision requires

that "pledged goods" that are not redeemed by the maturity date "shall be held by the pawnbroker for 30 days following that date"—*i.e.*, the 30-day grace period. These provisions seemingly confirm the definition section's requirement that the pawnbroker take physical possession of the pledged good when purchasing the good or gaining a security on a loan.

The APA also requires that the pawnbroker maintain a record of all pledged goods "on the premises." Ala. Code § 5-19A-5(b). The next provision calls "automobiles, trucks, and similar vehicles" "goods purchased" and requires a vehicle to be maintained "on the premises" for 21 days before it can be resold. Ala. Code § 5-19A-5(c). An automobile would be on the pawnbroker's premises only if he physically possessed it.

## B. Physical possession not required

That said, the automatic forfeiture provision suggests that in a title pawn, the "pledged good" is something other than the title:

> A pledgor shall have no obligation to redeem pledged goods or make any payment on a pawn transaction. Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and ==absolute right, title, and interest in and to the goods== shall vest in the pawnbroker.

Ala. Code § 5-19A-6 (highlight added). This provision separates the "right, title, and interest" to a pledged good from the pledged good itself. It seems odd to read this provision to say that a pledgor forfeits "title to his Title," rather than he forfeits "title to his Vehicle."

—

If this court had nothing but the statute to consider, it would find that (a) the pawnbroker ***is*** required to physically possess the tangible item for it to be a "pledged good" under the APA and (b) the Alabama Legislature wasn't thinking about how the possession rule applies to vehicle title pawns when it wrote the statute. The best solution would be for the Alabama Legislature to specifically address title pawns, as Georgia

has. *See* Ga. Code § 44-12-130 (defining "pledged goods" to include "any motor vehicle certificate of title" and saying that possession of the title "shall be conclusively deemed to be possession of the motor vehicle").

But the Alabama Legislature has not acted, so parties have pressed the Alabama appellate courts. We turn there now.

### 2. Alabama caselaw

### A. *Floyd*: Vehicle title pawns allowed under the APA

Alabama passed the APA in 1992. Soon after, the State Banking Department told Title Exchange, a pawnbroker, that its vehicle title pawn practice was unlawful. *See Floyd v. Title Exch. & Pawn of Anniston, Inc.*, 620 So. 2d 576, 576-77 (Ala. 1993). Title Exchange sued, asking for an injunction that would prevent the State from ending its title pawn practice. The trial court issued the injunction, finding that because the pawnbroker possessed the vehicle's title and a key, it constructively possessed the vehicle under the APA.

The Supreme Court affirmed, although with very little analysis. Looking at the definition of pledged good, it agreed with the trial court that a certificate of title was not a "chose in action" but wasn't sure whether it was "tangible physical property" distinct from the vehicle it registered. *Id.* at 579. The court then suggested that if the Alabama Legislature intended to shut down vehicle title pawns, it could amend the APA. *Id.* It hasn't.

A few months later, the Alabama Supreme Court clarified its holding in *Floyd*:

> In [*Floyd v. Title Exchange*], we held that an automobile certificate of title is 'tangible personal property' within the meaning of the Alabama Pawnshop Act. The effect of that decision was to hold that money-lending transactions involving the transfer of automobile certificates of title for the purposes of giving security are 'pawn' transactions . . . .

*Blackmon v. Downey*, 624 So. 2d 1374, 1376 (Ala. 1993) (highlight added). So federal courts must read the APA's definition of a "pawn transaction" in a way that allows vehicle title pawns to fit within it.

### B. *Coleman*: No constructive possession

Ten years later, the same court decided *Ex parte Coleman*, 861 So. 2d 1080 (Ala. 2003). In *Coleman*, debtors sued a pawnbroker for wrongfully taking their vehicle, then selling it, during an orally-extended 30-day grace period. The pawnbroker argued there was no oral agreement to extend the grace period, and under *Floyd*, he "constructively possessed" the vehicle because he held the title. So the pawnbroker was free to take and sell the vehicle. *Id.* at 1082.

The supreme court remanded for trial, finding that whether the grace period had been extended was a genuinely disputed material fact. Relevant here, the court also clarified two things about its *Floyd* decision: (a) *Floyd* does not say that possession of the certificate of title and a key creates constructive possession of the car and (b) *Floyd* does not say that pawnbrokers that hold a title can legally repossess the vehicle before the maturity date or during the 30-day grace period. *Id.* at 1086.

—

Applied here, the Supreme Court of Alabama has definitively said that (a) vehicle title pawns are pawn transactions under the APA, and (b) certificates of title are tangible personal property. It's unclear what the court thinks about constructive possession, other than clarifying that it has not adopted the concept. But the court uses the terms 'vehicle' and 'title' somewhat interchangeably. *See, e.g.*, *Blackmon*, 624 So. 2d at 1375 ("Downey transferred the *title* to his automobile to Blackmon . . . . At the end of 10 weeks, Blackmon was to return the *car* to Downey.") (emphasis added); *Coleman*, 861 So. 2d at 1081-82 ("The Colemans alleged that The Money Tree wrongfully took possession of their 1995 Cadillac *automobile*, *which the Colemans had pawned* to The Money Tree . . . . The Colemans initially borrowed $500 and pawned the *title* to their 1995 Cadillac . . . . Thereafter, the Colemans together and then Vera singly repawned *their car* each month . . . .").

## C. *Pattans Ventures*: The vehicle is forfeited

The Alabama Court of Civil Appeals has been clearer. In *State ex rel. Morgan v. Thompson*, 791 So. 2d 977 (Ala. Civ. App. 2001), Thompson pawned his car title to Mayhall Title Pawn for $300. Thompson did not redeem by the maturity date (April 26) or the end of the 30-day grace period (June 26). Unfortunately for Mayhall, the State seized the vehicle on June 18—eight days before the grace period expired. The State argued, and the Court of Civil Appeals held, that Mayhall did not own the vehicle on June 18 because the 30-day grace period had yet to run. So Mayhall was entitled only to the amount of its interest as a "bona fide lienholder." *Id.* at 978. In dicta, the court cited the APA's automatic forfeiture provision, Ala. Code § 5-19A-6, to say that Mayhall would have owned the vehicle on June 26, when the 30-day grace period expired. *Id.*

The court said the same thing, but more clearly, in *Pattans Ventures, Inc. v. Williams*, 959 So. 2d 115 (Ala. Civ. App. 2006). Williams pawned his SUV's title to Pattans Ventures for $700 and kept the SUV. Williams did not redeem the pawn. Pattans Ventures took the SUV eight months after the pawn ticket matured and sold it less than 30 days later. The court said that, when Pattans Ventures took the SUV months after the 30-day grace period ended, it "merely took possession of a *vehicle* that legally belonged to it." *Id.* at 121 (emphasis added). In doing so, the court cited the state supreme court's decision in *Coleman*: "our supreme court [in *Coleman*] implicitly held that the pawnshop was not required first to take possession of the vehicle" once the maturity date had passed, and then give Williams 30 days. *Id.* at 122. The court remanded to determine whether Williams had tried to timely redeem the pawn.

In *Complete Cash Holdings, LLC v. Fryer*, 297 So. 3d 1223 (Ala. Civ. App. 2019), the court briefly described the state of the law:

> Initially, we note that, under Alabama law, title loans are considered pawn transactions governed by the Alabama Pawnshop Act, § 5-19A-1 et seq., Ala. Code 1975 ("the act"). *Floyd v. Title Exch. & Pawn of Anniston, Inc.*, 620 So. 2d 576,

> 579 (Ala. 1993). As pawn transactions, title loans are generally considered to be nonrecourse loans that do not create personal debt on the part of a pawnor. For example, § 5-19A-6, Ala. Code 1975, provides that "[a] pledgor shall have no obligation to redeem pledged goods or make any payment on a pawn transaction." Section 5-19A-8(7), Ala. Code 1975, likewise provides that "[a] pawnbroker ... shall not ... [m]ake any agreement requiring the personal liability of a pledgor or seller ...." Instead, should a borrower default on the loan or otherwise fail to redeem a pledged vehicle, a pawnbroker's remedy under the act is to take possession of that vehicle.

*Id.* at 1225.

—

To sum up, the best reading of Alabama appellate precedent is that (1) vehicle title pawns are pawn transactions covered by the APA; (2) pawnbrokers are required to give pledgors 30 days to redeem the pledge after the maturity date; and (3) if 30 days passes without redemption, the pawnbroker has absolute right, title, and interest in and to the vehicle—not just its paper title.

### 3. Application of State law to Hambright's pawn

Applying the state courts' holdings and statements about the APA to these facts, the court finds that, under the APA's automatic forfeiture provision, TitleMax took "absolute right, title, and interest in and to" Hambright's Dodge Challenger when the 30-day grace period expired on May 26, 2020. Ala. Code § 5-19A-6. While the court appreciates the bankruptcy court's plain reading of the defined term "pledged goods," the bankruptcy court's conclusion that TitleMax owned a piece of paper and a lien, but not the Dodge Challenger, once Hambright's grace period expired, contradicts the Alabama state courts' reading of the APA. Their reading is plausible, and we federal courts must defer to the state courts'

definition of Hambright and TitleMax's respective property rights. *In re Northington*, 876 F.3d at 1310.

This outcome not only best reflects the state courts' precedent, it vindicates the express written agreement of the parties:

> **6.**    **Non-Recourse; Delinquent Payment and Additional Pawnshop Charges; Nonpayment and Failure to Redeem:** This Pawn is non-recourse to you.  You shall have no obligation to redeem the Vehicle or make any payment on this Pawn.  Nothing in this Agreement gives us any recourse against you personally other than our right to take possession of the Vehicle upon your default, and to sell or otherwise dispose of the Vehicle in accordance with the Alabama Pawn Shop Act.
>
> Lender is entitled to assess an additional pawnshop charge in the amount equal to the Pawnshop Charge set forth above for principal amounts that remain outstanding and unpaid following the Maturity Date. Additional pawnshop charges assessed following the Maturity Date will be prorated if you redeem the Vehicle or pay the accrued and outstanding charges and enter into a new Pawn Ticket and Security Agreement with us, based on the number of days between the Maturity Date and the redemption date or new pawn transaction date, as applicable.
>
> If you fail to redeem the Vehicle within 30 days following the Maturity Date hereunder, and you do not pay accrued and outstanding charges and enter into a new Pawn Ticket and Security Agreement with us, then the Vehicle shall be forfeited to and absolute right, title, and interest in and to the Vehicle shall vest in Lender.
>
> **7.**    **Voluntary Surrender:** At any time, you may choose to voluntarily surrender possession, ownership, and all other right and interest in and to the Vehicle and Title to us. Upon your voluntary surrender, we will retain possession of the Vehicle and the Title and will not sell the Vehicle before the 30th day following the Maturity Date.
>
> **8.**    **Default and Repossession:** If you fail to timely pay any amount payable hereunder when due, then your account will be in default.  You also will be in default if you made any false representation warranty, promise, or provision in or in connection with entering into this Agreement.  We may take possession of the Vehicle upon your default.  We or our recovery vendor may take possession of the Vehicle without judicial process if doing so can be done without breaching the peace. We may not sell the Vehicle before the 30th day following the Maturity Date.

Hambright knew that she would forfeit her car *and* its title to TitleMax if she failed to redeem by the end of the 30-day grace period. And under Section 8 above, she also knew TitleMax had the right to take her vehicle, without any judicial process, from then on.

## CONCLUSION

For these reasons, the court **REVERSES** the Bankruptcy Court's decision in *In re Hambright*, 635 B.R. 614 (Bankr. N.D. Ala. 2022) and **REMANDS** each of the consolidated cases for further proceedings consistent with this opinion, as applied to the particular facts of the case. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** on March 29, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE